## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CONSTANCE MITCHELL, et al.,

        Plaintiffs,

    v.                                 Case No. C-1-03-771

LOWE'S HOME CENTERS, INC.,

        Defendant.

## ORDER

### I. Introduction

This matter is before the Court upon defendant Lowe's Home Centers, Inc.'s motion for summary judgment on Count II of its counterclaim against plaintiff Constance Mitchell (doc. 28) and its motion for summary judgment on plaintiffs' claims (doc. 30). Plaintiff Mitchell opposes the motions (docs. 35, 38). Defendant has filed a reply in support of its motions (doc. 40) and proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (docs. 42, 43).

Plaintiffs Mitchell and Linda Huffman filed the complaint in this action on November 4, 2003, against defendant Lowe's Home Centers, Inc. (Lowe's). Jurisdiction is based on diversity of citizenship. Plaintiffs bring claims for violations of Ohio Revised Code § 4112.02 and Ohio public policy and for intentional infliction of emotional distress. Plaintiffs allege that they were discharged without just cause by defendant, subjected to a hostile work environment, retaliated against, and otherwise discriminated against on account of their gender. Plaintiffs claim that as a

1

direct result of defendant's conduct, they have suffered and will continue to suffer loss of income and fringe benefits, embarrassment, humiliation, and mental anguish and suffering.

Defendant filed an answer and asserted a counterclaim against Mitchell alleging misappropriation of funds for which it seeks specified relief (Count I) and breach of Mitchell's obligations under a Promissory Agreement pursuant to which Mitchell agreed to pay defendant the sum of $4,900.00 for misappropriation of bonus payments (Count II) (doc. 5).

Plaintiff Huffman filed a Notice of Filing under Bankruptcy Code on October 20, 2005 (doc. 31). Plaintiff Mitchell filed a motion to stay the action. By Order dated November 17, 2005, the Court denied the motion to stay as to plaintiff Mitchell and stayed the action brought by plaintiff Huffman pending further notice of the Court. The summary judgment motions brought by defendant on the claims asserted by Mitchell and the counterclaim against her are ripe for decision and are addressed in this Order.

## II. Motion for summary judgment on plaintiff's claims

Lowe's moves for summary judgment on Mitchell's claims for sexual harassment, retaliation, violation of Ohio public policy, and intentional infliction of emotional distress. Defendant does not dispute that plaintiff has enough evidence to show that there are genuine issues of fact as to whether she was subjected to a sexually hostile environment, but defendant contends that Mitchell's sexual harassment claim must fail because she unreasonably failed to take advantage of the preventive and corrective opportunities made available to her by Lowe's to stop harassment by her supervisors. Lowe's alleges that plaintiff cannot establish her retaliation claim because (1) she cannot show that the alleged retaliatory harassment created a hostile or offensive work environment that was severe and pervasive, (2) the evidence does not support an inference that plaintiff's termination was causally related to any protected activity, and (3)

2

plaintiff cannot overcome Lowe's evidence that it had a legitimate, non-retaliatory reason for terminating her employment. Lowe's contends that plaintiff cannot establish a claim for wrongful discharge in violation of Ohio public policy because the jeopardy element of a public policy claim is not satisfied. Finally, Lowe's argues that plaintiff cannot establish her intentional infliction of emotional distress claim because the conduct on which she bases her claim does not rise to the level of "extreme and outrageous" as a matter of law and she has not shown that she suffered any "serious" emotional distress as a result of defendant's conduct.

Plaintiff states that she is not contesting defendant's motion with respect to her public policy claim. Plaintiff does not dispute the statement of facts presented by defendant in its motion, but plaintiff contends that counsel failed to disclose a number of pertinent facts. As to her sexual harassment claim, plaintiff asserts that there is a threshold issue as to whether defendant is entitled to the defense to liability for a hostile environment created by a supervisor articulated in *Faragher v. Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275 (1998). Plaintiff argues that there are issues as to whether the perpetrators of the harassment were plaintiff's supervisors and whether defendant took reasonable care to prevent and promptly correct the harassment after plaintiff reported the behavior on numerous occasions. Plaintiff argues that if the perpetrators were her co-workers rather than her supervisors, defendant still cannot establish an affirmative defense to liability since there is no evidence that defendant undertook a prompt remedial response to the harassment as is required in order for an employer to avoid liability for co-worker harassment. *See Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999). Plaintiff further argues that she has presented sufficient evidence of a causal connection between her protected activity and her termination and of pretext to establish a retaliation claim. Finally, plaintiff alleges that the conduct to which she was subjected was extreme and outrageous and that the

3

nightmares she has suffered as a result are evidence of severe emotional distress.

### III. Motion for summary judgment on Count II of the counterclaim

Lowe's moves for summary judgment on its counterclaim for breach of a Promissory Agreement whereby plaintiff agreed to repay defendant $4,900.00 for damages it had purportedly sustained as a result of fraud plaintiff allegedly committed against the company. Lowe's argues that plaintiff has admitted that (1) she signed the Agreement promising to repay the company that amount, (2) she is in breach of the Agreement, and (3) Lowe's has been damaged as a result of the breach.

In response, plaintiff alleges that she signed the Promissory Agreement under duress. Plaintiff denies that she committed fraud and maintains instead that she followed proper procedure pursuant to the training she had received.  Plaintiff further contends that defendant cannot document a loss of $4,900.00 resulting from plaintiff's actions.

### IV. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

4

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*,  391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

### V. Undisputed facts

1. Plaintiff began her employment at Lowe's Store # 173 as a cashier on February 22, 1996.

2. On the day plaintiff began her employment, she participated in an orientation during which she was made aware of the company's equal employment, anti-discrimination, and anti-harassment policies.  Lowe's had a sexual harassment and anti-discrimination policy in place throughout the course of plaintiff's employment.  Plaintiff received a copy of the company's Orientation Guide, which contains a copy of company policies.

3. Lowe's has an "Alert Line," which allows an employee to make a complaint to the company outside of the channels provided in the company's policies.  An employee could call the Alert Line and make the complaint either anonymously or not to a third party who administered the Alert Line, who would then convey the complaint to Lowe's Human Resources Department to investigate.

4. Plaintiff moved to Store #477 after Store #173 closed in early 1996.

5. In approximately June of 1996, Mitchell received a promotion to head cashier.  Approximately 18 months later, she was moved to Customer Sales Associate IV.  She remained in that position until May of 1998 when she was promoted to Team Leader in appliances.

6. In October of 1998, Mitchell was promoted to Assistant Zone Manager in electronics. She remained there until she was promoted to Assistant Department Manager in electronics.

7. Plaintiff was subsequently moved to Assistant Department Manager in appliances and then to Department Manager of appliances. She remained in the latter position until November 7, 2001.

8. Plaintiff was promoted to Department Manager of appliances in October of 1999, and she remained in that position until November 7, 2001.

9. Lowe's is divided into territorial regions, each of which has a Regional Vice-President. Each region is subdivided into districts, and each district has its own District Manager. Under the District Manager are Store Managers for each Lowe's store in the district.

10. Fred Mason was Store Manager for Store #477 from the time it opened in June of 1996 until his retirement in 1999.

11. Assistant Store Manager Rich Donahue served on a temporary basis as Store Manager of Store #477. Fred Richards became Store Manager in the latter part of 1999 and remained in that position for one year until he was transferred to another store.

12. Jim Nolen became Store Manager of Store #477 in November 2000 and remained in that position until June 2004.

13. Tim Kochendoerfer became the Store Operations Manager when Store #477 opened in June of 1996. He left Store #477 when he was promoted to District Operations Manager in May of 1997. Kochendoerfer returned to Store #477 as an Assistant Store Manager in October of 1998. Kochendoerfer remained an Assistant Store Manager at Store #477 until his termination in July of 2001.

14. Dan Beach became an Assistant Store Manager for Store #477 in 1997 and stayed in that position until his termination in July of 2001.

15. Shawn McClaskey was a Department Manager at the time of his termination in July of 2001.

16. Store #477 was divided into Four Zones, each of which had an Assistant Store Manager. Zone 1 was indoor and outdoor lawn and garden; Zone 2 was interior store; Zone 3 was millwork and tools; and Zone 4 was the front end of the store and included administration, return desk, and cashiers.

17. Jam Lambert was District Manager for Store #173 and Store #477 until 1996.  Jeff Rowe held the position from 1996 until his retirement in March of 2005.

18. Plaintiff never complained to anyone in management about Beach or McClaskey.

19. Denise Gilreath became the Area Human Resources Manager for Store #477 in June of 2000.

20. In the summer of 2001, Store Manager Jim Nolen received an anonymous letter complaining that Beach had engaged in inappropriate conduct towards employee Pam Crabtree.  As a result, Nolen contacted Gilreath, who went to Store #477 to investigate.

21. Gilreath and Jonathan Lott of Human Resources interviewed many employees whom Huffman had identified as having knowledge of the allegations as well as Mitchell, Huffman, Kochendoerfer, Beach and McClaskey.  At Gilreath's request, both Huffman and Mitchell provided a written statement summarizing their harassment allegations.

22. As a result of their investigation, Gilreath and Lott recommended to Nolen the immediate termination of Kochendoerfer and Beach for violations of the company's sexual harassment policy.  Nolen passed this recommendation on to Rowe, who agreed with the recommendation. Rowe went to Store #477 that day to inform Kochendoerfer and Beach of their terminations.

23. Nolen later made the decision to also terminate McClaskey for violations of the company's sexual harassment policy, and Rowe agreed with that decision as well.

24. After the terminations, in August of 2001, all employees of Store #477, including Mitchell and Huffman, were required to attend sexual harassment training.

25. Mitchell was not issued any discipline by Lowe's between the July 2001 investigation and her termination on November 7, 2001.

26. Mitchell liked working at Lowe's, she thought Lowe's was a good company to work for, and she thought she did a good job for Lowe's.

27. Mitchell has not sought psychiatric counseling at any time, and although she currently has a prescription for Xanax, it was prescribed prior to her employment with Lowe's and she cannot recall what it was prescribed for.

28. At each Lowe's store, employees in certain departments were eligible to receive extra money, or "spiffs," if the employee sold a particular manufacturer's product to a customer.

29. Mitchell, in her capacity as Department Manager in appliances, was eligible for spiffs and could receive them by making an in-store customer sale or by making a special order sale.

30. Lowe's Loss Prevention Specialist Conachen arrived at Store #477 on November 7, 2001, to interview Mitchell regarding allegations of spiff fraud that had been made against her.  He had Anastasia Payne, Manager of the Lawn and Garden Department, sit in on the interview.

31. During the interview, Mitchell signed several documents, including a promissory note.

32. On November 7, 2001, Nolen met with Mitchell and informed her that she was being terminated from Lowe's effective immediately for dishonesty involving spiff fraud.  He presented Mitchell with an Employee Performance Report which detailed the reasons for her termination.  She refused to sign the report.  Payne was present during the termination meeting.

8

33. Mitchell did not make any payments to Lowe's under the terms of the Promissory Agreement she had signed.

## VI. Disputed facts

Plaintiff disputes the following facts alleged by defendant:

1. In August of 2001, cashier Shirley Combs complained to Lowe's Loss Prevention Specialist Jeff Stewart that Mitchell was engaging in "spiff" fraud.  Combs informed Stewart that Mitchell has asked cashiers, including Combs, to return the sales of other employees in the Appliance Department and then re-ring those sales under Mitchell's employee number, thus allowing Mitchell to receive the spiff.

2. Stewart informed Store Manager Nolen of the allegations and Nolen asked Stewart to investigate, which he did.

3. Nolen contacted Lowe's Area Loss Prevention Manager, Steve Meadows, to ask how to handle the situation.  Meadows suggested that an investigator come to the store to interview Mitchell about the allegations against her.

4. During the interview, Loss Prevention Specialist Conachen reviewed the evidence with Mitchell.  She admitted that she had committed fraud and in the process had taken an extra $4,900.00 from Lowe's.  Mitchell also signed several documents that showed how she had committed spiff fraud and she signed a written confession and provided a videotaped confession.

5. Mitchell signed a Promissory Agreement in which she agreed to repay Lowe's $4,900.00 plus interest.

6. Mitchell admitted during the video and to Nolen separately that she had not been coerced into her confession and that she had been treated fairly by Conachen.

9

7. After Mitchell's confession, Nolen decided to terminate her employment based upon her admitted spiff fraud. Prior to terminating her, Nolen contacted Rowe and Meadows to discuss his assessment of the matter, and both agreed with Nolen's decision to terminate Mitchell.

## VII. Applicable law

Federal case law interpreting Title VII is generally applicable to cases involving alleged violations of Ohio Rev. Code Ch. 4112. *Little Forest Med. Ctr. of Akron v. OCRC,* 61 Ohio St.3d 607, 609-610, 575 N.E.2d 1164, 1167 (1991). Accordingly, the Court will look to both federal case law and Ohio law in order to resolve the motion for summary judgment on plaintiff's sexual harassment and retaliation claims against Lowe's.

### A. Sexual harassment

Discrimination that is "sufficiently 'severe or pervasive' to 'alter the conditions of [the victim's] employment and create an abusive working environment'" is actionable under both Title VII and Ohio law. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 106 S.Ct. 2399, 2405 (1986); *Tarver v. Calex Corp.,* 125 Ohio App.3d 468, 708 N.E.2d 1041 (1998). To establish a prima facie hostile environment case based on gender, plaintiff must establish that (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her gender, (4) the harassment had the effect of unreasonably interfering with her work performance by creating a hostile, offensive, or intimidating work environment, and (5) there is employer liability. *See Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999).

To satisfy the fourth prong, plaintiff must show that the conduct to which she was subjected was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive, and that she subjectively regarded the conduct as abusive. *Smith v.*

*Leggett Wire Co.,* 220 F.3d 752, 760 (6th Cir. 2000) (citing *Jackson v. Quanex Corp.,* 191 F.3d 647, 658-59 (6th Cir. 1999)). In determining whether a reasonable person would consider an environment hostile or abusive and whether plaintiff perceived the environment to be so, a court must consider all of the circumstances, including the frequency and severity of the conduct; whether the conduct is physically threatening or humiliating or a mere offensive utterance; and whether the conduct unreasonably interfered with the employee's work performance. *Hafford,* 183 F.3d at 512.

Employer liability for co-worker harassment is based directly on the employer's conduct. *Id.* at 513 (citing *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 804 n. 11 (6th Cir. 1994)). An employer is liable if it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Id.*  Employer liability for supervisor harassment is vicarious. *Id.* (citing *Pierce,* 40 F.3d at 803). As the Supreme Court has explained:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

*Id.* (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 2292 (1998)).

The Supreme Court in *Faragher* explained that

> while proof that an employee failed to fulfill the corresponding obligation of
> reasonable care to avoid harm is not limited to showing an unreasonable failure to
> use any complaint procedure provided by the employer, a demonstration of such
> failure will normally suffice to satisfy the employer's burden under the second
> element of the defense.

*Id.* at 807-08.

## B. Retaliation

Ohio Rev. Code § 4112.02 makes it illegal

(I) For any person to discriminate in any manner against any other person because
that person has opposed any unlawful discriminatory practice defined in this
section or because that person has made a charge, testified, assisted, or
participated in any manner in any investigation, proceeding, or hearing under §§
4112.01 to 4112.07 of the Revised Code.

To establish a prima facie case of retaliation under O.R.C. § 4112.02, plaintiff must

demonstrate that (1) she engaged in activity protected under the statute; (2) defendant thereafter

took adverse employment action against the plaintiff; and (3) a causal connection exists between

the protected activity and the adverse employment action. *Thatcher v. Goodwill Industries of*

*Akron,* 117 Ohio App.3d 525, 534-35, 690 N.E.2d 1320, 1326 (1997).  "The burden of

establishing a prima facie case in a retaliation action is not onerous, but one easily met."

*Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

In order to establish an "adverse employment action," plaintiff must show "a materially adverse change in the terms and conditions of [her] employment." *Hollins v. Atlantic Company,* 188 F.3d 652, 662 (6th Cir. 1999).

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir. 1993)).

To establish a causal connection, plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had plaintiff not engaged in protected activity. *Nguyen,* 229 F.3d at 563.  Evidence that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *Id.* (citing *Moon v. Transport Drivers, Inc.,* 836 F.2d 226, 230 (6th Cir. 1987)); *see also Ford v. Gen. Motors Co.,* 305 F.3d 545, 552-53 (6th Cir. 2002).  The Sixth Circuit stated in *Ford* that while "'temporal proximity alone will not support an inference in the face of compelling evidence' to the contrary, 'the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection.'"  *Ford,* 305 F.3d at 554-55 (quoting *Moon,* 836 F.2d at 229); *see also DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004) ("this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.")

13

Once plaintiff establishes a prima facie case of retaliation, the burden is on defendant to establish a legitimate reason for the adverse action, which plaintiff may rebut by producing credible evidence of pretext. *Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.,* 783 F.2d 50, 54 (6th Cir. 1986). The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings in the context of a discrimination claim: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; or 3) the reasons were insufficient to warrant a discharge. *Manzer v. Diamond Shamrock Chemicals Company,* 29 F.3d 1078, 1084 (6th Cir. 1994). The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. *Id.* The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id.* For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.*

The Sixth Circuit has cautioned that "[t]he soundness of an employer's business judgment . . . may not be questioned as a means of showing pretext." *Brocklehurst v. PPG Industries, Inc.,* 123 F.3d 890, 898 (6th Cir. 1997). Although the court should refrain from probing an employer's business judgment, business judgment is not an absolute defense to unlawful discrimination or retaliation. *Wexler v. White's Furniture, Inc*., 317 F.3d 564, 576 (6th Cir. 2003) (citing *E.E.O.C. v. Yenkin-Majestic Paint Corp.,* 112 F.3d 831, 835 (6th Cir.1997)). The Sixth Circuit in *Wexler* addressed the extent to which a fact-finder may consider the reasonableness of an employer's

decision:

> [T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. ***Smith v. Chrysler Corp.***, 155 F.3d 799, 807 (6th Cir.1998)) (holding that, in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into 'whether the employer made a *reasonably informed and considered decision* before taking an adverse employment action') (emphasis added); ***In re Lewis***, 845 F.2d 624, 633 (6th Cir. 1988) ('Sears does not have to establish that the basis on which it acted in firing Lewis was *sound;* rather, Lewis has the burden of demonstrating that Sears' stated reasons are pretextual. One way for Lewis to do this is to show that Sears' asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.') (emphasis in original) (internal quotation marks omitted).

***Id.***

### C. Intentional infliction of emotional distress

Ohio law recognizes the tort of intentional infliction of emotional distress. ***See Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers***, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983).  The elements of a claim for intentional infliction of emotional distress are: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' . . .  3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'"  ***Pyle v. Pyle***, 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (8th Dist. 1983).

### D. Promissory Agreement

The Ohio Supreme Court has set forth the elements that must be proved in order to establish that an agreement is the product of duress: (1) one party involuntarily accepted the terms of another; (2) the circumstances permitted no other alternative; and (3) the circumstances were the result of coercive acts of the opposing party. *Blodgett v. Blodgett,* 49 Ohio St.3d 243, 246, 551 N.E.2d 1249, 1251 (1990) (citations omitted).  To avoid a contract on the basis of duress, it is not sufficient "to show that one assented merely because of difficult circumstances that are not the fault of the other party." *Id.* at 246, 551 N.E.2d at 1252.  Rather, "a party must prove coercion by the other party to the contract." *Id.*

### VIII. Opinion

### A. Sexual harassment

### 1. *Ellerth/Faragher* affirmative defense

Upon a careful review of the record, the Court finds that plaintiff has come forward with sufficient evidence to establish that there are genuine issues of material fact which preclude summary judgment in favor of defendant on her sexual harassment claim.  The Court initially determines that there is an issue as to whether defendant is entitled to the affirmative defense to liability for an actionable hostile environment created by a supervisor articulated in *Faragher* and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257 (1998).  Plaintiff disputes that Kochendoerfer and Beach were her supervisors but contends that even if they were, defendant cannot establish the *Ellerth/Faragher* affirmative defense because defendant did not take any corrective action in response to the sexually harassing behavior after plaintiff had reported the behavior on numerous occasions.  Defendant contends that both Kochendoerfer and Beach had the requisite supervisory authority to entitle Lowe's to invoke the *Ellerth/Faragher*

16

affirmative defense.  Defendant argues that it is entitled to the defense because it exercised reasonable care to prevent and correct promptly any sexually harassing behavior.  Defendant contends that Mason was receptive to plaintiff's complaints as was Lambert, who left and was replaced by Rowe.  Defendant also alleges that "while Mitchell may not have been able to discern that any meaningful action was taken in response to her complaints, no one said or did anything to dissuade her from pursuing the complaints or to retaliate against her for doing so. And no one gave her any reason to believe that complaining about sexual harassment in the future would be futile."  Defendant's reply brief, p. 7.

Whether Kochendoerfer and Beach are properly characterized as plaintiff's supervisors or as her co-workers need not be resolved on summary judgment.  Assuming the individuals were plaintiff's supervisors, plaintiff has presented evidence that calls into question whether defendant exercised reasonable care to prevent and correct in a prompt manner sexually harassing behavior and whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by defendant or to avoid harm otherwise.  Assuming the perpetrators are appropriately characterized as plaintiff's co-workers rather than her supervisors, there are issues of fact as to whether defendant knew or should have known of the ongoing harassment described by plaintiff and whether it failed to implement prompt and appropriate corrective action to address the harassment.  The evidence includes plaintiff's deposition testimony that she and other cashiers complained of sexual harassment to Store Manager Fred Mason during a period of time when Kochendoerfer was her supervisor; that Mason and Store Manager Richards observed the harassing behavior and Richards also participated in the behavior; that plaintiff complained to Jan Lambert, the District Manager; that plaintiff contacted defendant's 800 number Alert Line when the abuse continued; that even after complaints were made and Kochendoerfer was promoted to

17

District Operations Manager in April 1997, he was at Store #477 on a weekly basis; that Kochendoerfer's behavior continued after his promotion and upon his subsequent demotion for sexual harassment of a female at another location and his return to Store #477 in October 1998; that Huffman reported the continuing inappropriate behavior and the complaints of other employees who came to her in her capacity as Personnel Training Coordinator to Richards and Nolen, who openly joked about the 800-line and its confidentiality and suggested that they would be able to determine who had lodged a complaint; that District Manager Rowe was aware of Kochendoerfer's continuing sexual harassment after his demotion and encouraged it; and that Beach, plaintiff's supervisor for a brief period of time, also engaged in offensive behavior toward Mitchell and the other female cashiers.  A reasonable jury could conclude based on this evidence that although defendant had an anti-harassment policy in place of which plaintiff was aware, defendant did not enforce its policy at all relevant times and failed to take action that was reasonably calculated to end the harassing behavior.  The jury could also infer that plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by defendant or unreasonably fail to avoid harm otherwise.  Thus, because there are numerous disputed factual issues which require the weighing of evidence and credibility determinations and which preclude a finding on summary judgment that defendant is entitled to the ***Ellerth/Faragher*** affirmative defense to liability, defendant is not entitled to summary judgment based on its assertion of the defense.

**2. Statute of limitations**

Defendant argues in its reply brief that whether its handling of plaintiff's complaints reflects that it administered its anti-harassment policy in bad faith is of no legal significance

because plaintiff made all of her complaints prior to May 1997, which is outside the six-year statute of limitations for claims under Ohio Rev. Code Ch. 4112. *See Cosgrove v. Williamsburg of Cincinnati Mgmt. Co., Inc.,* 70 Ohio St.3d 281, 638 N.E.2d 991, syll. (1994). Defendant contends that having filed her complaint on November 3, 2003, plaintiff cannot advance any claims based upon conduct that occurred prior to November 3, 1997, and she cannot rely on complaints made prior to that date to show that the company administered its anti-harassment policy in bad faith.

Defendant has not cited any Ohio case law to support its argument that conduct occurring outside of the limitations period cannot be considered in resolving plaintiff's hostile environment claim and specifically the applicability of the *Ellerth/Faragher* affirmative defense. The evidence presented by plaintiff raises an issue as to whether the numerous acts of harassment on which she bases her claim are properly construed as one unlawful employment practice so as to constitute a continuing violation. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061 (2002). Thus, for purposes of resolving the summary judgment motion, the Court will not discount the evidence of sexual harassment and complaints predating November 3, 1997.

### B. Retaliation

Plaintiff alleges that after the July 2001 investigation and termination of Kochendoerfer, Beach and McClaskey, Lowe's retaliated against her by harassing her in the following manner: (1) an unidentified person put a dead chicken next to a box under her car; (2) Store Manager Nolen accused her of refunding a steam cleaner to McClaskey's family; (3) Nolen embarrassed her by accusing her of failing to prepare a report he had never asked her to prepare; and (4) Lowe's terminated plaintiff for spiff fraud on November 7, 2001, in retaliation for her

involvement in the July 2001 investigation.  Plaintiff alleges that her admission of spiff fraud was coerced because she was interrogated for seven hours by a Loss Prevention Specialist and promised that if she cooperated by agreeing that she had committed a violation of company policy, she would not be terminated but instead would be permitted to retrain and move to another department.  She claims that she was told what to write in her statement and what answers to give during a taped "training film," and she was forced to sign a promissory note.  Plaintiff alleges that the abusive behavior of her interrogator during the investigation into the allegations of spiff fraud demonstrates defendant's discriminatory intent. Plaintiff further argues that the four-month interval between her participation in the July 2001 investigation and her termination does not destroy the causal connection between the two, especially since plaintiff was off work from September 2001 until October 15, 2001 due to knee surgery.

Defendant alleges that plaintiff cannot establish a prima facie case of retaliation because (1) plaintiff has not overcome defendant's showing that the alleged retaliatory conduct was not subjectively or objectively hostile or offensive, nor severe or pervasive enough to be actionable, and she has no evidence linking the conduct to her participation in the July 2001 sexual harassment investigation; and (2) plaintiff has not shown that she was not guilty of spiff fraud, even if the company's investigator could be found to have engaged in bullying "tactics." Defendant further contends that plaintiff cannot establish pretext.

The Court finds that plaintiff has produced sufficient evidence to create a genuine issue of material fact on her retaliation claim.  The evidence shows that plaintiff engaged in protected activity, defendant knew of her activity, and defendant subsequently terminated plaintiff.  It is for the jury to weigh the evidence and determine whether there is a causal connection between plaintiff's protected activity and her termination and whether the reason proffered by defendant

20

for plaintiff's termination is pretextual.  Accordingly, the Court will deny defendant's motion for summary judgment on plaintiff's retaliation claim.

## C. Intentional infliction of emotional distress

Plaintiff alleges that the conduct to which she was subjected was extreme and outrageous and that the nightmares she has suffered as a result are evidence of severe emotional distress. Defendant contends that there is no specific conduct occurring within the four-year limitations period applicable to this claim that could be deemed extreme and outrageous.  Defendant further avers that plaintiff has not shown that the alleged bullying tactics by her interrogator were extreme and outrageous or that she suffered serious emotional distress.

The Court finds that further development of the record and weighing of the evidence is necessary in order to resolve plaintiff's claim for intentional infliction of emotional distress. Accordingly, the Court will deny defendant's motion for summary judgment as to this claim.

## D. Defendant's counterclaim

Plaintiff has come forward with evidence that creates genuine issues of material fact as to whether the Promissory Agreement she signed for the payment of $4,900.00 to Lowe's was the product of duress.  This is a determination for the jury to make based on the totality of the circumstances surrounding the signing of the Agreement.  Accordingly, defendant is not entitled to summary judgment on Count II of its counterclaim.

## IX. Conclusion

In accordance with the foregoing, defendant's motions for summary judgment (docs. 28, 30) are **DENIED** except as to plaintiff Mitchell's public policy claim.  The public policy claim is **DISMISSED.**  The case will proceed to trial on Mitchell's remaining claims and defendant's counterclaim pursuant to the schedule established by the Court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER, SENIOR JUDGE
UNITED STATES DISTRICT COURT

J:\HJWA\03-771retlsxharPUBwpd.wpd